UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

NATHANIEL RAY,

                Petitioner,

      v.

MICHAEL CAPRA,

                Respondent.

———————————————————

**DECISION AND ORDER**

1:19-CV-01635 EAW

## INTRODUCTION

*Pro se* petitioner Nathaniel Ray ("Petitioner") is a prisoner incarcerated at the Upstate Correctional Facility who has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is serving an indeterminate sentence of incarceration of 16 years to life based on his conviction in New York State Supreme Court, Erie County (the "trial court") of criminal possession of a weapon in the second degree. Petitioner asserts claims that: (1) he was deprived of the right to counsel by the trial court's denial of his request for substitution; (2) he was denied the effective assistance of trial counsel; (3) the trial court erred in instructing the jury on the "automobile presumption" found in New York Penal Law § 265.15(3)[1]; and (4) he was denied the effective assistance of appellate

---

[1] "Under New York Penal Law § 265.15(3), the existence of a firearm in an automobile creates a permissive—not mandatory—presumption that all occupants of the vehicle have common constructive possession of the firearm, absent specific exceptions (the 'Automobile Presumption')." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 434 (E.D.N.Y. 2012). The Supreme Court has held that the automobile presumption is

counsel. (Dkt. 1). Petitioner has further filed a motion for a stay and abeyance. (Dkt. 9). For the reasons that follow, the Court denies both Petitioner's pending motion and the petition.

**BACKGROUND**

## I.    State Court Trial Proceedings

On May 12, 2015, an Erie County grand jury returned an indictment charging Petitioner and co-defendant Donald Johnson ("Johnson") with criminal possession of a weapon in the second degree, in violation of New York Penal Law §§ 20.00 and 265.03(3). (State Court Record ("SCR"), Indictment No. 00017-2015). Johnson was also charged with attempted murder in the second degree. (*Id*.).

Petitioner was arraigned on May 19, 2015. (SCR, Transcript of Proceedings on May 19, 2015). Petitioner's assigned counsel, John Ange, Esq. ("trial counsel"), was unable to attend the proceeding, and Johnson's counsel stood in for him. (*Id*. at 2). Johnson's counsel entered a plea of not guilty on Petitioner's behalf and requested that a pretrial conference be scheduled for June 4, 2015, so that trial counsel could be present. (*Id*. at 3). At no time during this proceeding did Petitioner raise any concerns regarding trial counsel's absence.

Trial counsel appeared on Petitioner's behalf at the pretrial conference on June 4, 2015. (SCR, Transcript of Proceedings on June 4, 2015). A schedule was set for the matter.

---

constitutional as applied as a permissive presumption. *County Ct. of Ulster Cnty., N.Y. v. Allen,* 442 U.S. 140, 162-63 (1979).

(*Id*. at 2).  The trial judge noted that he had received a letter from Petitioner in the mail that morning and that he was returning the letter to Petitioner.  (*Id*. at 2).  The trial judge stated that he would advise Petitioner not to make *pro se* filings, stating "[y]ou go to the dentist, you don't pull your own teeth. Work through your attorney. Fair enough?" (*Id*.).  Petitioner responded, "[y]es, Judge."  (*Id*. at 3).

In June of 2015, trial counsel filed an omnibus motion on Petitioner's behalf seeking several forms of relief, including suppression of the firearm underlying the charge against Petitioner.  (SCR, Omnibus Motion).  A suppression hearing was held before the trial court on August 6 and 13, 2015.  (SCR, Transcript of Proceedings on Aug. 6, 2015; SCR, Transcript of Proceedings on Aug. 13, 2015).  At the outset of the proceedings on August 6, 2015, there was a discussion between the Court, the prosecution, and trial counsel regarding a letter from Petitioner dated August 6, 2015, in which Petitioner raised concerns regarding the notice he had received of the grand jury proceedings.  (SCR, Transcript of Proceedings on Aug. 6, 2015, at 2-3).  Trial counsel indicated that he had received the grand jury notice and had discussed the issue with Petitioner and that he and Petitioner had decided that Petitioner would not testify before the grand jury.  (*Id*. at 3).  The trial court specifically asked Petitioner if he understood the discussion and Petitioner responded, "yes." (*Id*. at 4).  The trial judge continued: "Okay.  So you're satisfied. You understand what was just laid out on the record." (*Id*.).  Petitioner responded, "I heard what was put on the record, yes." (*Id*.).

At the proceedings on August 13, 2015, trial counsel noted for the record that he represented one of the witnesses—City of Buffalo police detective Jerry Guilian—in an

unrelated civil matter.  (SCR, Transcript of Proceedings on Aug. 13, 2015, at 2).  Detective Guilian had not had any interaction with Petitioner, and trial counsel told the trial court that he had discussed the matter with Petitioner and advised Petitioner that his unrelated representation of Detective Guilian would "in no way lessen [his] zeal in [Petitioner's] defense," and that he had no information from his unrelated representation of Detective Guilian that would bear on the issue of credibility.  (*Id*. at 3).  The trial court confirmed that Petitioner had no objection to trial counsel's representation in light of this information, and Petitioner stated that he did not.  (*Id*.).

The trial court denied the motion to suppress in a Decision and Order dated October 15, 2015.  (SCR, Decision and Order, Oct. 15, 2015).  Trial counsel also filed a motion to dismiss the indictment for legal insufficiency, which the trial court denied on August 7, 2015.  (SCR, Memorandum Decision and Order, Aug. 7, 2015).

A jury trial commenced on November 9, 2015.  (SCR, Transcript of Proceedings on Nov. 9, 2015).   On the first day of trial, Petitioner asked the trial judge if he had received a "motion slash letter" that Petitioner had sent to him "two weeks ago."  (*Id*. at 9).  The trial judge was unable to locate any such letter in his file.  (*Id*. at 9-10).  Petitioner then handed up a "petition for reassignment of counsel."  (*Id*. at 10).  The trial judge stated that it was "way too late" to make such a request and that it would have been too late to do so two weeks earlier.  (*Id*.).  The trial judge further advised Petitioner that trial counsel was "one of the top ten [criminal defense attorneys] in Erie County" in the trial judge's view. (*Id*.).  Petitioner stated that he had "asked many things" of trial counsel and that "[w]hatever

he says maybe based on the American Bar Association's standards of criminal procedures and he had failed to conduct them and that's what my issue is." (*Id.*).

When asked by the trial judge what his specific complaint about trial counsel was, Petitioner responded, "he's not submitting motions on my behalf, he's not keeping me informed about how the case is going." (*Id.* at 11). The trial judge stated that he had the complete file, that trial counsel had filed all appropriate motions, and that there was nothing the trial judge could see that trial counsel should have done but had not done. (*Id.*). The trial judge then denied the request for reassignment of counsel and proceeded to jury selection. (*Id.*).

At trial, City of Buffalo police detective Thomas Herbert testified that on December 30, 2014, he responded to a report of shots fired at 159 Cortland Avenue. (SCR, Transcript of Proceedings on Nov. 10, 2015, at 224). Detective Herbert and Officer John Sullivan spoke to an individual named Eric Coleman, who reported being shot at, and that the involved vehicle was a red Chevrolet Trailblazer with license plate GHZ1121 (the "Trailblazer"). (*Id.* at 225). Two other City of Buffalo police officers working in the area located the Trailblazer approximately two blocks away. (*Id.* at 226). Detective Herbert and Officer Sullivan drove to the location and pulled over the Trailblazer. (*Id.*). Three individuals were inside the Trailblazer when it was pulled over, including Petitioner, who was the driver, and Johnson. (*Id.* at 225-26). After removing the individuals from the Trailblazer, Detective Herbert searched the vehicle and discovered a firearm behind the glovebox on the passenger side. (*Id.* at 227-28).

Eyewitness Alfonzo Moore, a friend of Coleman's, testified to seeing Johnson shoot at Coleman, seeing the Trailblazer pull away, immediately searching the neighborhood for the Trailblazer, shortly thereafter seeing the Trailblazer park approximately four blocks away, and seeing three individuals, including Petitioner and Johnson, exiting the Trailblazer.  (*Id*. at 241-253).

City of Buffalo police detective Harvey Frankel testified that a fired cartridge was recovered from the scene of the shooting on December 30, 2014.   (SCR, Transcript of Proceedings on Nov. 12, 2015, at 321-24).  Forensic firearms examiner Cody McKellar testified that the firearm recovered from the Trailblazer was operable and that the fired cartridge recovered by the police was the same caliber as the recovered firearm.  (*Id*. at 321-24).

At the close of the prosecution's case, trial counsel moved for dismissal on the basis of insufficient evidence.  (*Id*. at 324-25).  The trial court denied the motion.  (*Id*. at 326).

During the charge conference, the trial judge's law clerk asked trial counsel whether he wanted "the exception to the presumption charge."  (*Id*. at 330).  Trial counsel initially said yes, but the law clerk clarified that he was referring to exceptions for "a cab driver, person or by licensee," and that he did not "see any proof of that."  (*Id*.).  Trial counsel replied, "I'm sorry.  I didn't understand.  I don't need those exceptions.  I think that will just confuse things."  (*Id*.).

On November 13, 2015, the jury found Petitioner guilty of criminal possession of a weapon in the second degree.  (SCR, Transcript of Proceedings on Nov. 13, 2015, at 417).  At Petitioner's request, new counsel was assigned for purposes of sentencing.  (SCR,

Transcript of Proceedings on Feb. 11, 2016, at 2-3).  On April 29, 2016, the trial court sentenced Petitioner as a predicate violent felony offender to an indeterminate term of imprisonment with a minimum of 25 years and a maximum of life.  (SCR, Transcript of Proceedings on Apr. 29, 2016, at 10-11).

## II.   <u>Direct Appeal</u>

Represented by new counsel, Petitioner appealed his convictions, arguing that: (1) the trial court erred in refusing to suppress the firearm found in the Trailblazer; (2) the verdict was against the weight of the evidence and legally insufficient to sustain the conviction; and (3) the sentence was unduly harsh and excessive.  *People v. Ray*, 159 A.D.3d 1429, 1429-30 (4th Dep't 2018).  On March 16, 2018, the New York State Supreme Court, Appellate Division, Fourth Department (the "Appellate Division") unanimously modified the judgment "as a matter of discretion in the interest of justice by reducing the sentence imposed to an indeterminate term of incarceration of 16 years to life," and affirmed the judgment as modified.  *Id*. at 1429.

Petitioner sought leave to appeal to the New York Court of Appeals, and the New York Court of Appeals denied leave on May 25, 2018.  *People v. Ray*, 31 N.Y.3d 1086 (2018).

## III.   <u>State Court Post-Conviction Motion</u>

On July 30, 2019, Petitioner, now acting *pro se*, filed a motion for a writ of error coram nobis.  (SCR, Exhibit D, at 1-25).  Petitioner argued that: (1) the trial court abused its discretion in denying his request for substitution of assigned trial counsel without carefully evaluating his complaints; (2) trial counsel provided ineffective assistance

because he did not request that the trial court charge the exception to the automobile presumption and his closing argument "conceded [Petitioner's] guilt and was in effect an argument for the conviction of [Petitioner]"; (3) appellate counsel was ineffective for having failed to make a claim for ineffective assistance of trial counsel; and (4) the trial court erred in charging the automobile presumption under the facts and circumstances of this case.  (*Id*.).  The Appellate Division summarily denied Petitioner's motion for a writ of error coram nobis on September 27, 2019.  *People v. Ray*, 175 A.D.3d 1851 (4th Dep't 2019).  Petitioner sought leave to appeal to the New York Court of Appeals, and the New York Court of Appeals denied leave on November 13, 2019.  *People v. Ray*, 34 N.Y.3d 1018 (2019).

## IV.   <u>Federal Habeas Corpus Proceeding</u>

The instant action was opened on December 2, 2019.  (Dkt. 1).  Respondent filed his response to the petition on February 25, 2020 (Dkt. 3; Dkt. 4), and Petitioner filed a reply on March 27, 2020 (Dkt. 5).

Petitioner filed a motion to stay on September 22, 2022.  (Dkt. 7).  The Court denied this motion without prejudice, explaining that Petitioner had "asked the Court for a stay and abeyance 'so that [he] may return to state court and file a CPL 440.10 motion'" but had "failed to provide the Court with any information regarding the basis for his anticipated CPL 440.10 motion."  (Dkt. 8 (alteration in original and quoting Dkt. 7 at 1)).  Because the Court lacked a sufficient factual basis to grant Petitioner's motion, it denied his request "without prejudice to the filing of a motion for a stay and abeyance that sets forth the legal

and factual grounds for Petitioner's request." (*Id*.).   The pending motion for a stay and abeyance was filed on October 11, 2022.  (Dkt. 9).

## DISCUSSION

### I.   Motion to Stay

The Court turns first to Petitioner's for a stay and abeyance.  (Dkt. 9).   Petitioner has again provided the Court with no meaningful information regarding the basis for his request, stating only that he has "newly discovered evidence that must be addressed first by the state court in order to properly [preserve] issues for federal review." (*Id*. at 1).  He has provided no information whatsoever regarding the alleged newly discovered evidence.

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  A state inmate must exhaust his state administrative remedies before pursuing federal habeas relief. *Zarvela v. Artuz*, 254 F.3d 374, 378 (2d Cir. 2001).  "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of the State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citations omitted).  Where a federal habeas petition contains both claims that have been exhausted in the state courts and unexhausted claims, it is considered a mixed petition. *Rhines v. Weber*, 544 U.S. 269, 271 (2005).  A district court

presented with a mixed petition may, in limited circumstances, "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id*. at 275.   In particular, this "stay and abeyance" procedure is appropriate only if "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and the unexhausted claims are not "plainly meritless." *Id*. at 277.   A request for a stay and abeyance such as the one made by Petitioner "implicitly requests permission to amend [the] habeas petition to add new claims." *Roundtree v. Kirkpatrick*, No. 11-CV-6188 CJS, 2011 WL 6148621, at *3 (W.D.N.Y. Oct. 6, 2011).

Despite having been afforded a second opportunity to do so, Petitioner has failed to identify the unexhausted claims that he seeks to pursue in state court.   Accordingly, the Court cannot find that a stay and abeyance is appropriate. *See id*. at *4.   Petitioner's motion is accordingly denied.

## II.   <u>Standard of Review for Petition</u>

As noted above, "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by" AEDPA. *Richter*, 562 U.S. at 97.   AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003).   Now, under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Section 2254(d)'s standard for reviewing claims adjudicated on the merits by state courts is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

"AEDPA 'sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it,'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)), "so even if the standard set forth in section [2254(d)(1) or] 2254(d)(2) is met, the petitioner still 'bears the ultimate burden of proving by a

preponderance of the evidence that his constitutional rights have been violated,'" *id.* (quoting *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012)).

The Court further notes that Petitioner raised all claims he asserts in this federal habeas action not on direct appeal, but in his coram nobis motion. "[T]he writ of error coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (alteration in original and quoting *People v. Gordon*, 183 A.D.2d 915, 915 (2d Dep't 1992)). There is accordingly an argument that only his ineffective assistance of appellate counsel claim has been properly exhausted. *But see Rosado v. Capra*, No. 9:09-CV-00676-JKS, 2012 WL 4062824, at *4 (N.D.N.Y. Sept. 14, 2012) ("Although this Court agrees that [the petitioner] did not raise the question on direct appeal, he did exhaust his claim that his appellate counsel was ineffective for failing to raise the claim. Thus, . . . in order for this Court to determine whether his appellate counsel was ineffective for failing to present [the underlying claim] on direct appeal, this Court must assess the validity of the underlying claim.").

In any event, AEDPA gives district courts the authority to deny a petition containing unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The rationale behind 28 U.S.C. § 2254(b)(2) has been described as "spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion."

*Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010).  In this Circuit, the various formulations for the proper standard to be used when relying on § 2254(b)(2) share "the common thread of disposing of unexhausted claims that are unquestionably meritless." *Id.* (collecting cases); *see also Barnes v. Uhler*, No. 6:18-CV-06428 EAW, 2021 WL 5176667, at *14 (W.D.N.Y. Nov. 8, 2021) (relying on "unquestionably meritless" standard referenced in *Keating* to dismiss unexhausted claims).  Because all of the petition's claims are readily denied on the merits, the Court will exercise its discretion to bypass the issues of exhaustion and procedural default.

## III.   **Timeliness of the Petition**

Respondent argues as a threshold matter that the petition is untimely.  (Dkt. 4 at 7). Relying on *Hizbullahankhamon v. Walker*, 255 F.3d 65 (2d Cir. 2001), Respondent argues that the limitations period was not tolled from September 27, 2019, when the Appellate Division denied Petitioner's motion for a writ of error coram nobis, to November 13, 2019, when the New York Court of Appeals denied leave to appeal.  (*Id*. at 7-8).  Respondent is incorrect, for the reasons that follow.

Under AEDPA, a § 2254 petition must be filed within one year of the date that the petitioner's state judgment became final.  The state judgment becomes final "after the denial of certiorari [by the Supreme Court] or the expiration of time for seeking certiorari." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  In other words, a New York state judgment becomes final if no petition for writ of certiorari is filed within 90 days of the New York Court of Appeals' disposition.   In this case, the state court judgment became

final on August 23, 2018, 90 days after the New York Court of Appeals' denial of leave with respect to the direct appeal.

"The filing of certain state court collateral attacks on a judgment, including New York *coram nobis* petitions, tolls AEDPA's one-year statute of limitations."  *Davis v. Lempke*, 767 F. App'x 151, 152 (2d Cir. 2019).  Petitioner filed his motion for a writ of error coram nobis on July 30, 2019, thus stopping the running of the statute of limitations.

At the time *Hizbullahankhamon* was decided, "a defendant had no right under New York law to apply to the Court of Appeals for leave to appeal from a denial of a coram nobis motion."  *Allen v. Artus*, No. 6:17-CV-6074 CJS, 2020 WL 6785498, at *10 (W.D.N.Y. Nov. 18, 2020).  Accordingly, the *Hizbullahankhamon* court held that a "petitioner's [coram nobis] motion ceased to be pending on the date on which the Appellate Division denied it, because, as of that date, the door of the New York Court of Appeals was closed and further appellate review was unavailable."  255 F.3d at 70 (quotation omitted).  However, "New York State law was subsequently amended, and now defendants are permitted to seek such relief from the Court of Appeals."  *Allen*, 2020 WL 6785498, at *10; *see McPherson v. Greiner*, No. 02 CIV.2726 DLC AJP, 2003 WL 22405449, at *12 (S.D.N.Y. Oct. 22, 2003) ("In 2002, the New York Criminal Procedure Law was amended to allow permissive appeals to the New York Court of Appeals from the denial of coram nobis petitions. C.P.L. § 450.90(1).").

District courts in this Circuit have consistently held that the subsequent amendments to New York law regarding coram nobis motions abrogated the holding in *Hizbullahankhamon*.  *See, e.g., Allen*, 2020 WL 6785498, at *10; *Rose v. Lee*, No. 9:13-

CV-299 MAD/ATB, 2015 WL 729817, at *6 (N.D.N.Y. Feb. 19, 2015); *Witherspoon v. New York*, No. 11-CV-5815 DLI, 2015 WL 5676020, at *2 (E.D.N.Y. Sept. 24, 2015). Thus, contrary to Respondent's argument, the statute of limitations remained tolled until November 13, 2019, when the Court of Appeals denied leave to appeal the denial of the motion for a writ of error coram nobis.

In sum, the state judgment became final on August 23, 2018. Petitioner filed his motion for a writ of error coram nobis 341 days later, on July 30, 2019. The statute of limitations was tolled until November 13, 2019, and then ran for 6 days until November 19, 2019, when Petitioner gave his signed petition and disbursement form to prison officials for mailing. (*See* Dkt. 1 at 27); *see also United States v. Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020) ("[T]he 'prisoner mailbox rule' . . . provides that an inmate's papers are deemed filed the day that they are signed and given to prison officials for mailing." (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)). Accordingly, the petition was filed within the one-year statute of limitations.

## IV.   Petitioner's Claims

### A.   Request for Substitution of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  "The Supreme Court has nevertheless recognized that the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat v. United States*, 486 U.S. 153 (1988)).  More specifically, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the

advocate of his or her choosing." *Id.* "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997). "[W]here a defendant voices a seemingly substantial complaint about counsel, the [trial] court should inquire into the reasons for dissatisfaction. However, if the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001).

In this case, the trial court inquired into the basis for Petitioner's request for substitution and determined that substitution was not warranted, because Petitioner's complaints were not founded. Petitioner has pointed to nothing in the record supporting the conclusion that substitution was constitutionally mandated.[2] Further, and as discussed more fully below, trial counsel was not incompetent and provided Petitioner with robust and zealous representation. Petitioner's assertion that he was unhappy with the level of communication he received from trial counsel does not rise to the level of a constitutional violation. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983) (explaining that the Sixth

---

[2]     The Court notes that to the extent trial counsel's representation of Detective Guilian represented a conflict, Petitioner has not claimed that his waiver of any such conflict was unknowing or involuntary. *See United States v. Mazzariello*, No. 13CV211A, 2014 WL 29369, at *6 (W.D.N.Y. Jan. 3, 2014) ("[T]he Second Circuit has held that conflicts arising due to an attorney's prior representation of a witness are waivable."). Nor has he argued that the trial court should have substituted counsel on this basis.

Amendment does not "guarantee[] a meaningful relationship between an accused and his counsel" (quotation omitted)).  Accordingly, Petitioner has not demonstrated that habeas relief is warranted on this basis.

### B.    Ineffective Assistance of Trial Counsel

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).  "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).  A court need not address both components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one.  *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018) ("[T]he object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (citation omitted)).

Moreover, where a state court has rejected the ineffective assistance of counsel claim, a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt" applies on federal habeas review.  *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant. . . .  [T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional

assistance." *Id.* at 22-23 (quotations and original alterations omitted).

Petitioner has argued that trial counsel was ineffective because: (1) he did not request that the jury be instructed on the exceptions to the automobile presumption; and (2) during his closing argument, he "marshaled facts in favor of [the] prosecution" and "conceded defendant's guilt." (Dkt. 1 at 10-11). As to the first of these arguments, the automobile presumption "does not apply if (1) the firearm is found on an occupant's person; (2) the vehicle is lawfully operated as a taxi, in which instance the duly licensed driver is not subject to the presumption; or (3) an occupant has in his possession a valid license to have and carry a firearm." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 434 (E.D.N.Y. 2012) (citing N.Y. Penal Law § 265.15(3)). The evidence presented at the trial in this case contained no support for the conclusion that any of these exceptions were applicable, as the trial judge's law clerk observed during the charge conference. Indeed, the Appellate Division noted on direct appeal that the exceptions to the automobile presumption were "not relevant" to the case. *Ray*, 159 A.D.3d at 1430. Accordingly, trial counsel acted well within the bounds of reasonable advocacy in not requesting that the jury be instructed on the exceptions. *See McKinney v. Burge*, No. 9:04-CV-1150 GTS/DEP, 2009 WL 666396, at *37 (N.D.N.Y. Mar. 10, 2009) ("counsel cannot be deemed ineffective for failing to make a meritless request for an inapplicable jury instruction").

Turning to Petitioner's second argument, Petitioner focuses on a portion of trial counsel's closing argument regarding accessorial liability. During that portion of his closing argument, trial counsel conceded that the evidence at trial could potentially allow the jury to conclude "that [Petitioner] was in Donald Johnson's presence when [Johnson]

committed the crime of possessing the weapon." (SCR, Transcript of Proceedings on Nov. 13, 2015, at 346). However, trial counsel went on to explain that even if the jury made such a finding, it was insufficient under New York law to amount to accessorial liability:

> So what I'm contending you should not do when you go back in the jury room [is] say to yourselves or say to one another well, he was in the car with him. He knew he had a gun, they had some kind of connection because he was giving him a ride, he must be just as guilty of possession of that gun. That's what I'm saying you may not do or I should say that's what the law is saying you may not do.

(*Id*. at 347).

In other words, far from marshaling evidence in favor of the prosecution or conceding Petitioner's guilt, trial counsel's closing argument was a zealous attempt to persuade the jury not to convict Petitioner notwithstanding the evidence clearly establishing that he was driving the car in which the firearm was discovered shortly after Johnson used the firearm to shoot at Coleman. Trial counsel repeatedly argued that Johnson was solely responsible for possessing the firearm, that Petitioner "never used it, . . . didn't bring it into the car, and . . . there's no evidence he ever touched it," and that it would be unjust for the jury to decide to apply the permissive automobile presumption. (*Id*. at 334-58). The fact that trial counsel was unsuccessful in persuading the jury does not render his performance deficient. *See United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) ("One strategic choice a lawyer may make is to concede an element of the charged crime. Such a decision is sound trial strategy when the attorney does not concede his client's guilt. . . . Similarly, lawyers are permitted to admit their client committed certain acts while challenging whether those acts fit within the charged crime." (quotation

and citations omitted)).

The Court further does not find that a view of the record as a whole supports the conclusion that Petitioner was deprived of the effective assistance of counsel. *See Richter*, 562 U.S. at 111 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").   A review of the record demonstrates that trial counsel vigorously advocated for Petitioner, including by making substantial pretrial motions.  On the record before it, the Court does not find that trial counsel was ineffective.

### C.   Charging the Automobile Presumption

Petitioner next argues that "[t]he trial judge erred in charging the automobile presumption of Penal Law 265.15(3) since it is unconstitutionally applied in this case." (Dkt. 1 at 12).   The Supreme Court has held that the automobile presumption is "constitutional as a permissive inference for a jury to accept or reject—in light of the evidence—in finding a defendant guilty of gun possession."  *Matthews*, 889 F. Supp. 2d at 437 (citing *Allen*, 442 U.S. at 160-64); *see also Glenn v. Bartlett*, 98 F.3d 721, 726 (2d Cir. 1996) ("[T]he Supreme Court has held that a permissive presumption—one that permits but does not require the jury to find the presumed fact—satisfies due process if, as applied in the particular case, there is a rational connection between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is more likely than not to flow from the former." (quotation omitted)).

Here, the jury was instructed that "if the People have proven beyond a reasonable doubt that the revolver was present in an automobile and that the defendant was occupying

such automobile at the time such revolver was found, then you may, but you are not required to, infer from those facts that the defendant possessed the revolver."  (SCR, Transcript of Proceedings on Nov. 13, 2015, at 404).  In other words, the jury was properly instructed that the presumption was permissive and not mandatory.  The jury was also properly instructed that it could not rely solely on the presumption to sustain a conviction, but that the prosecution was required to prove all the elements of the crime beyond a reasonable doubt.  (*Id*. at 404-05); *see Glenn*, 98 F.3d at 727 (finding New York's similar presumption for drugs found in an automobile constitutional as applied because "the jury was properly instructed that 'after consideration of all the evidence in the case' it could presume knowing possession of the drugs" and "the judge repeatedly instructed the jurors that they could reject entirely such presumption or inference").

There was also a rational connection between the facts proven at the trial and the ultimate fact presumed—namely, the jury could have reasonably determined that Petitioner was in an automobile knowing that there was a firearm stored in an area of that automobile that was accessible to him.  *See Allen*, 442 U.S. at 164-65 (explaining that automobile presumption is constitutionally applied where it is "rational to infer" that the occupant of a vehicle "was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over the weapons").  On the record before the Court, Petitioner cannot demonstrate that the automobile presumption was unconstitutionally applied in this case.

**D.**   <u>**Ineffective Assistance of Appellate Counsel**</u>

Petitioner's final argument is that appellate counsel provided ineffective assistance. (Dkt. 1 at 14).  Specifically, Petitioner contends that appellate counsel erred in failing to argue that trial counsel provided ineffective assistance.  (*Id.*).  As with trial counsel, "[t]o establish ineffective assistance of appellate counsel, [petitioner] must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quotations omitted).

Appellate counsel will not be faulted simply for declining to pursue every possible claim of error.  *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (stating that "[n]othing in the Constitution or [the Supreme Court's] interpretation of that document requires" a standard pursuant to which appellate counsel has "a duty to raise every 'colorable' claim suggested by a client") (footnote omitted).  "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Reviewing courts "are not to 'second-guess reasonable professional judgments' by appellate attorneys as to what are the most promising issues for appellate review." *Tsirizotakis v. LeFevre*, 736 F.2d 57, 65 (2d Cir. 1984) (quoting *Jones*, 463 U.S. at 754).

In this case, the arguments that Petitioner contends appellate counsel erred in omitting are arguments that—for the reasons already discussed above by the Court—are

- 22 -

without merit. Accordingly, Petitioner cannot demonstrate that appellate counsel was ineffective and is not entitled to habeas relief.

## **CONCLUSION**

For the reasons set forth above, the Court denies Petitioner's motion for a stay and abeyance (Dkt. 9) and denies the petition (Dkt. 1). The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment in favor of Respondent and close the case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 17, 2023
         Rochester, New York